UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **IN RE: GARDASIL PRODUCTS LIABILITY LITIGATION**<br><br>**THIS DOCUMENT RELATES TO ALL CASES** | **MDL No. 3036**<br>**Civil Action No. 3:22-md-03036-RJC** |

**ORDER GOVERNING PRODUCTION OF DOCUMENTS AND
ELECTRONICALLY STORED INFORMATION**

The following Order governs the production of documents and electronically stored information ("ESI") and shall apply to all discovery of ESI and hard copy documents in this Action, unless the Parties agree in advance and in writing or if this Order is modified by the Court.

This Order shall apply to all cases that were (1) transferred to this Court by the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to its August 11, 2022 Order; (2) subsequently transferred to MDL 3036 by the JPML pursuant to Rule 7.4 of the Rules of Procedure of that Panel; or (3) originally filed in or transferred or removed to MDL 3036.

**A.      General**

1. This Order will help streamline ESI and Document discovery to best carry out the requirements set forth in the Local Rules of Civil Procedure for the United States District Court for the Western District of North Carolina and the Federal Rules of Civil Procedure.

2. The Parties shall take all reasonable steps to comply with the protocols set forth herein. The Parties acknowledge their duty to work together cooperatively throughout the discovery process.

3. Except as specifically limited herein, this Order governs the production of discoverable Hard-Copy Documents, Electronic Documents, and ESI by the Parties during this Action. In the event of transfer to other courts, this Order will remain in effect in all respects, until adopted by the transferee court or replaced by a successor Order.

1

4. This Order shall not enlarge or affect the proper scope of discovery in this Action, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other litigation. Additionally, this Order does not alter or expand the preservation obligations of the Parties.

5. Subject to the Parties' objections and responses to requests for production of Documents, and subject to the Parties' Stipulated Protective Order (Doc. No. 70) and the Parties' Stipulated Privilege Log Order to be entered in this Action, all Documents or portions of Documents that are identified as responsive to discovery requests not designated as "privileged" shall be produced in the manner provided herein.

6. The Parties agree to abide by the terms of this Order in good faith and they agree to promptly alert all other Parties concerning any technical problems associated with complying with this Order. To the extent compliance with this Order imposes an undue burden, the Parties shall promptly confer in an effort to resolve the issue.

7. Consistent with their obligations under the Local Rules of Civil Procedure for the United States District Court for the Western District of North Carolina and the Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

### B. Definitions

1. "**Defendants**" means and refers to the named defendants in the above captioned matter, as well as any later added defendants, as well as their directors, principals, employees, agents, and affiliated companies.

2. "**Document**" is defined to be synonymous in meaning and equal in scope

to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

3. "**Electronic Document or Data**" means Documents or Data existing in electronic form at the time of collection, including but not limited to, e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint files), spreadsheets (e.g., Excel), and image files (e.g., jpg).

4. "**Electronically stored information**" or "**ESI**," as used herein has the same meaning as in Federal Rules of Civil Procedure.

5. "**Hard-Copy Document**" means Documents existing in paper form at the time of collection.

6. "**Native Format**" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is a .xls or .xslx file.

7. "**Metadata**" means: (i) structured, i.e., fielded, information embedded in or associated with a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes, *inter alia,* the characteristics, origins, custody, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

8. "**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

9. "**Optical Character Recognition**" or "**OCR**" means the process of recognizing, and creating a file containing, visible text within an image and making such Documents searchable using appropriate software.

10. "**Confidentiality Designation**" means the legend affixed to Documents for Confidential Information or Items as defined by, and subject to, the terms of the Parties' Stipulated Protective Order in this Action.

11. "**Searchable Text**" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

12. "**Load files**" means electronic files provided with a production set of documents and images used to load that production set into a receiving party's document review platform and correlate its data within that platform.

### C. Social Media

If responsive data that can reasonably be extracted and produced in the formats described herein is identified on a social media profile, that data shall be produced in accordance with the provisions of this Order. To the extent that responsive data identified on a social media profile is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on the profile.

### D. Mobile and Handheld Device Documents and Data

If responsive data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the provisions of this Order. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

### E. Other Filtering or Culling Technologies

Prior to use by any party, the Parties must meet and confer to disclose and discuss any proposed use of technologies to reduce the number of documents to be reviewed or produced (*i.e.*, TAR, file type culling, e-mail thread suppression, etc.). Use of these technologies to reduce the reviewable collection or production requires the consent of the other party and will be subject to a separate mutually agreeable protocol for the use of such technologies to be negotiated by the

4

Parties. The Parties will also disclose any prior use of any filtering or culling applied to its collected documents.

### F. Previously Collected and Produced Data

The Parties agree that there is no obligation to recollect, reprocess or reproduce any prior collections or productions collected or produced prior to the entry of this Order. This includes not requiring either party to reproduce productions in the production format outlined in this Order. Pursuant to Section DD (Alternate Formats) below, the Parties shall confer regarding the production of a previously produced document in an alternate format if reasonable and necessary.

### G. Production Format and Processing Specifications

1. **Non-Redacted Electronically Stored Information Not Produced in Native Form**. Non-redacted ESI should be produced in a form no less "searchable" than it is maintained in the normal course of the producing party's business. ESI will be produced in single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (OPT or DII files) (depending on the preference of the requesting party). Conversion of Word documents: When Word documents are converted to TIFFs, the version that will be converted is as it was last saved and with track changes turned on. This means the images and extracted text will reflect the track changes. In all events, conversion of Microsoft Office document types to TIFF shall reflect comments, speaker notes, footers, headers and track changes.

2. TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint documents should be processed with hidden slides and all speaker notes unhidden and should be processed to show both the slide and the speaker's notes on the TIFF/JPG/PNG image. Color originals may be produced in B&W TIFF format, but either party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent that the Requesting Party demonstrates that the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original, however categorical or wholesale requests are deemed invalid. The producing party will produce the color document as soon as reasonably able and no later than within 10 days of request, unless otherwise agreed to by the Parties.

3. If a document is produced in native format, Bates-stamped TIFF images will also be produced for the native document (except for Excel spreadsheets or other data types which will be produced with a TIFF placeholder image) in accordance with Section G(1) above. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.

4. Non-redacted ESI shall be produced with searchable extracted text of the entire Document (at the document level in a .TXT file) and the following Metadata fields in a Concordance .DAT file, where applicable:

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| BEGBATES | ABC000001 | Beginning production number or Bates number for a given file/document | All |
| ENDBATES | ABC000002 | Ending production number or Bates number for a given file/document | All |
| BEGATTACH | ABC000001 | Beginning production number or Bates number for the attachment range | All |
| ENDATTACH | ABC000015 | Ending production number or Bates number for the attachment range | All |
| VOLUME | PROD00001 | Production volume | All |
| PAGES | 100 | Number of pages for a document | All |
| CUSTODIAN(S) | Smith, John; Brown, Julie | Custodial source(s) of the document, including documents not produced due to global de-duplication. | All |
| DUPLICATE CUSTODIAN(S) | Smith, John | Other custodian(s) that also had a duplicate of the record, including documents not produced due to global de-duplication | E-mail and E-Doc |
| RECORDTYPE | EMAIL, ATTACHMENT, EFILE, HARDCOPY | Type of document | All |
| TITLE | File title | Title of a document | E-mail and E-Doc |
| FILENAME | Minutes.doc | File name of a document | E-mail and E-Doc |
| ALL FILE NAMES | Minutes.doc; Meeting.doc | Other file names for documents not produced due to | E-mail and E-Doc |

6

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| | | global de-duplication | |
| FILEEXT | .doc, .pdf | File extension of original document | E-mail and E-Doc |
| FILESIZE | 45 | Document file size in bytes | E-mail and E-Doc |
| FILE PATH | C:My Documents\Agenda | Original path of document | E-mail and E-Doc |
| ALL FILE PATHS | C:Myg Documents\Agenda; C:My Documents\Meeting Notes | Other original paths of document(s) not produced due to global de-duplication | E-mail and E-Doc |
| APPLICATION | Excel, Word, Outlook | Application used to create the native file | E-mail and E-Doc |
| SORTDATE | 4/5/2012 | Last modified date for efile; Sent date for email and attachments | E-mail and E-Doc |
| CREATEDATE | 4/5/2012 | Date created for efile | E-Doc |
| CREATETIME | 12:00 pm | Time document was created | E-Doc |
| LASTMODIFIEDBY | Smith, John | The name of the last person to edit the document | E-Doc |
| SENTDATE | 4/5/2012 | Date sent for emails | E-mail |
| SENTTIME | 12:00 pm | Time sent for emails | E-mail |
| SUBJECT | Meeting Minutes | Subject line extracted from e-mail message | E-mail |
| AUTHOR | Smith, John | Author of a document | E-mail and E-Doc |
| FROM | Smith, John | Sender | E-mail |
| TO | Jones, Tom; Brown, Julie | Recipient | E-mail |
| CC | Cain, John | Copyee | E-mail |
| BCC | Stevens, Lisa | Blind Copyee | E-mail |
| MD5HASH | | MD5Hash of loose files or attachments | E-mail and E-Doc |
| EMAIL CONVERSATION INDEX | | ID used to tie together email threads | E-mail |
| DESIGNATION | Confidential, Highly Confidential | Confidentiality designation | All |
| REDACTED | | Field for documents with a redaction | All |
| FULL TEXT | D:001\RET000005.txt | Relative path to document level text file | All |
| | | | |
| NATIVELINK | D:\001\ABC000005.xls | Relative path to natively produced file | E-mail and E-Doc |

This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original Metadata of the Document. The Parties acknowledge there can be differences between the Operating System (Windows) and Application date/time fields and also agree that the producing party has no obligation to try and reconcile the differences, if any. If documents, such as electronic mail, are produced, the relationship between related documents (e.g., email attachments) should be preserved. All Electronic Documents attached to an email are produced contemporaneously and sequentially immediately after the parent email.

5. **Production – Non Responsive Documents Attached to Production Eligible Documents**

    The Parties agree that completely non-responsive documents attached to an otherwise production-eligible document can be produced as a single-page Bates-stamped TIFF image slip-sheet containing the text stating the document has been withheld as non-responsive. When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.

    H.  **ESI to be Produced in Native Form**

    1. All spreadsheet (e.g., Microsoft Excel) files shall be produced as native files with TIFF placeholder images.

    2. All word processing (e.g., Microsoft Word), presentation (e.g., Microsoft PowerPoint), image and media files (e.g., .jpg, .gif), and emails shall be produced as native files in accordance with Section G(3) above, unless redactions are required and/or if part of a family with one or more redacted documents, in which case such files shall be produced as TIFFs.

    I.  **Redacted Documents**

    The Parties may redact Documents or ESI on the following bases: attorney-client privilege, attorney work-product privilege, Protected Material and "Personally Identifiable Information," "Sensitive Private Data," or "Nonpublic Personal Information" as these terms are defined under federal, state or foreign data protection laws. If, during the course of discovery, the Parties identify

8

Case 3:22-md-03036-RJC   Document 96   Filed 04/24/23   Page 8 of 16

other kinds of information that any party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made. If the issue cannot be resolved, the Parties will seek resolution from the Court. If the receiving party finds a document to be incomprehensible or unintelligible because of a redaction, the Parties will meet and confer to try in good faith to resolve the dispute. For redacted electronic files, and redacted Hard-Copy Documents, the Parties agree to produce ESI and Hard-Copy Documents as redacted single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (depending on the preference of the requesting party), with Metadata in the dat. file. All Electronic Documents attached to an e-mail are to be produced contemporaneously and sequentially immediately after the parent e-mail. The Metadata fields for a redacted Document or ESI will include BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, and TEXT, which shall contain the OCR or Optical Character Recognition text so as not to reveal redacted text. To the extent Documents or ESI have been de-duplicated, the CUSTODIAN field shall list all custodians that had possession of the Document. All applicable metadata fields, redacted as appropriate, should be produced.

   **J.**   **Hard-Copy Documents**

1. **Production.** Hard-Copy Documents should be produced as single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (depending on the preference of the requesting party) with coded data contained in a separate file. The producing party shall also provide document level OCR text files to accompany the TIFF format production. The minimum fields for a scanned Hard-Copy Document record will be BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, and TEXT, indicating the beginning and ending Bates numbers, attachments ranges of all documents, the custodian information, and the OCR or Optical Character Recognition text.

2. **Scanning of Hard-Copy Documents.** In scanning paper documents, documents are to be

produced as they are kept. For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. Pages with Post-It notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-It.

3. **Document Unitization for Hard-Copy Documents**. Parties will use best efforts to unitize documents (*i.e*., distinct documents should not be merged into a single record, and a single document should not be split into multiple records), and maintain document relationships, i.e., attachment status. Original document orientation (*i.e*., portrait v. landscape) should be maintained.

**K. Searchable Text**

The Parties agree that they will produce Searchable Text for all Electronic Documents and Electronic Data produced. For all non-redacted ESI and redacted Excel, searchable text will be extracted directly from the native file. Likewise, the Parties agree that they will produce Searchable Text for all Hard-Copy Documents that have been converted to images. For any document where text has been redacted, Searchable Text will be provided for the non-redacted text.

**L. Compressed Files**

Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

**M. Replacements**

All files that are replaced for any reason must be annotated with an "R" designation appended to the Bates prefix. A cross reference file will be provided identifying the document's original Bates and its replacement Bates number.

**N. Embedded Objects**

10

Case 3:22-md-03036-RJC   Document 96   Filed 04/24/23   Page 10 of 16

Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Order.

O.  **Foreign Language Documents**

To the extent that Documents or ESI are produced that contain languages other than English, in whole or in part, the producing party shall produce all foreign language documents and ESI in the original language.  The producing party has no obligation to provide a translation of the Document or ESI or any portion thereof.

P.  **OCR**

OCR software should be set to the highest quality setting during processing. Documents containing foreign language text shall be OCR'ed using the appropriate settings for that language, e.g., OCR of German documents will use settings that properly capture umlauts. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

Q.  **Load Files**

Productions will include image load files in Opticon or IPRO format as well as Concordance format data (.dat) files with the metadata fields identified in Exhibit 1 for all included documents.  All metadata will be produced in UTF-8 format.

R.  **Text Files**

A single text file shall be provided for each document. The text file name shall be the same as the Bates number of the first page of the document with the document extension ".txt" suffixed. Files names shall not have any special characters or embedded spaces.  Electronic text must be extracted directly from the native electronic file unless the document requires redaction and is not a spreadsheet, is an image file, or is any other native electronic file that does not contain text to extract (*e.g.,* non-searchable PDFs).  In these instances, and in the case of imaged hard-copy

documents, a text file shall be created using OCR and shall be produced in lieu of extracted text. Text shall be provided in UTF-8 format. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden worksheets, slides, columns and rows.

### S. Text Extracted from Emails

Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

### T. Bates Numbers

All bates numbers will consist of a three digit Alpha Prefix, followed immediately by an 8 digit numeric: AAA########. There must be no spaces in the Bates number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits. Each page of a produced image shall have a unique Bates number electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source Document. Each TIFF image or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

### U. Date Fields Time Zone

All documents shall be processed so as to show fielded dates and times in Eastern Time Zone.

### V. Exception Files

The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files").

12

Case 3:22-md-03036-RJC   Document 96   Filed 04/24/23   Page 12 of 16

**W. Databases, Structured, Aggregated or Application Data**

The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application. The Parties will cooperate in the exchange of information concerning such databases and data sources to facilitate discussions on productions and production format.

**X. Lost, Destroyed or Irretrievable ESI**

If a Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists.

**Y. Confidentiality Treatment**

The Parties have entered into a Stipulated Protective Order (Doc. No.70) in this Action , which specifies various confidentiality treatment levels for use in this Action .

1. The confidentiality treatment level for any item will be provided with the created data for that item, in the field entitled "Confidentiality Treatment." For items with no confidentiality requirements, the field will be left blank.

2. The producing party will brand any confidentiality endorsements in a corner of any TIFF images representing the produced item. Those endorsements must be in a consistent font type and size, and must not obscure any part of the underlying image or Bates number.

13

**Z. Global De-Duplication**

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. The Parties agree that an e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. Removal of near-duplicate documents is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and the DUPLICATE CUSTODIAN(S) field will list each custodian, separated by a semicolon, who was a source of that document.

**AA. Encrypted or Password-Protected ESI**

For any ESI that is produced in encrypted format or is password-protected, the producing party will make reasonable efforts to try to provide the propounding party a means to gain access to those files (for example, by supplying passwords.)

**BB. Parent-Child Relationships**

Parent-child relationships such as the association between an attachment and its parent document, or between embedded documents and their parent, or between a document with document stubs or links to internal or non-public documents and those stubbed out documents or internal or non-public documents so linked, shall be preserved. Email attachments and embedded files or links "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates number of the parent documents and ending number of the last attachment must be populated for each child and parent document. Email attachments and embedded filed or links are to be produced contemporaneously and sequentially immediately after the parent email record.

**CC. Production Media**

The producing party will use the appropriate electronic media (CD, DVD or hard drive) or secure electronic transfer (e.g., FTP) for its ESI production, and, if physical media is being provided, will cooperate in good faith to use the highest-capacity available media to minimize

14

associated overhead. The producing party will label the physical media with the producing party, production date, media volume name, and document number range. Any replacement Production Media will cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced.

**DD. Alternate Formats.** Notwithstanding the Parties' stipulations herein, upon reasonable request made by the Receiving Party, the Parties shall confer regarding the production in an alternate format of a document previously produced and/or previously produced in accordance with this Order.

**EE. Third Party Documents**

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to these Actions have requested that third parties produce documents in accordance with the specifications set forth herein. Within 14 days of receiving any Documents or ESI obtained pursuant to a non-Party subpoena, the Issuing Party shall produce such Documents or ESI to all other Parties, except where the Third Party Documents are to be used in a deposition in which case the Issuing Party shall produce such Documents or ESI to all other Parties no later than three (3) days prior to the deposition. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

**FF. Proportionality**

Nothing contained herein is intended to limit a party's proportionality and burden arguments specifically related to the costs to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

**GG. Costs and Burden**

The Parties believe that the burdens placed on it during this litigation, including during discovery, must be proportional to the litigation itself, including the nature of the claims and the amount in controversy. See Fed. R. Civ. P. 1, Fed. R. Civ. P. 26(b)(2)(C). All Parties reserve the right to seek shifting or sharing of certain discovery costs, including vendor and attorney fees, in appropriate circumstances.

**IT IS SO ORDERED.**

Signed: April 24, 2023

Robert J. Conrad, Jr.
United States District Judge